UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAWN EVANS,

                                    Plaintiff,

                                                                            **Hon. Hugh B. Scott**

                                                                                    12CV570

                            v.
                                                                                 CONSENT

                                                                                    **Order**

CANFIELD, et al.,

                                    Defendants.

_____


         Before the Court are the following motions:  defendants' motion for summary judgment

(Docket No. 62)[1] and plaintiff's (proceeding pro se) cross motion for summary judgment

(Docket No. 64)[2].  Responses to the defense motion were due by April 25, 2014, with replies

initially due May 2, 2014 (Docket No. 63), while responses to plaintiff's motion were due by

May 9, 2014, and replies to both motions were due by May 16, 2014 (Docket No. 69).  The

parties consented to proceed before the undersigned as Magistrate Judge on September 24, 2013

(Docket No. 50).

---

         [1]In support of this motion, defendants submit their Statement of Undisputed Facts, the declarations of Peter
Bogarski, Dr. Wesley Canfield, Dr. Carl Koenigsmann, Benjamin Oakes, and John vonHagn, and their
Memorandum of Law, Docket No. 62.  In opposition, plaintiff submits his motion for summary judgment and its
supporting papers, Docket Nos. 64, 65-68, described below.

         [2]In support of his motion, plaintiff submits his declaration with exhibits, Docket Nos. 65, 68 (exhibits); his
Memorandum of Law, Docket No. 66; his Statement of Disputed Facts, Docket No. 67.  In opposition, defendants
submit their response to plaintiff's Statement, Docket No. 70; and their responding Memorandum of Law, Docket
No. 71.

BACKGROUND

In this pro se civil rights action, plaintiff alleges that defendants (corrections officers and officials at Southport Correctional Facility ("Southport") and the Department of Corrections and Community Supervision ("DOCCS")) were deliberately indifferent in treating various ailments he had while in their custody at Southport.  Plaintiff filed his initial Complaint on June 18, 2012 (Docket No. 1), and amended that Complaint (Docket No. 6) to allege claims against defendant John vonHagn on July 27, 2012.  Most of the defendants answered the original Complaint (Docket No. 9) and vonHagn answered the amended pleading (Docket No. 10; see Docket No. 62, Defs. Statement ¶¶ 4-5).  Plaintiff, on April 12, 2013, moved to amend the Complaint (Docket No. 13), which was granted (Docket Nos. 18 (Order), 21 (Amended Complaint)).  Defendants answered that amended pleading (Docket No. 30).  Plaintiff again moved to amend the Complaint (Docket No. 27) to add additional ailments, which was granted (Docket No. 31 (Order), 32 (Third Amended Complaint)).  Defendants answered this amended pleading (Docket No. 33).

The Third Amended Complaint names Dr. Canfield, Benjamin Oakes, Dr. Koenigsmann, regional health administrator Peter Bogarski, and nurse administrator John vonHagn.  In this Third Amended Complaint (Docket No. 32) plaintiff alleges that defendant Dr. Canfield wrote a letter denying plaintiff pain medication for his lower back.  Plaintiff then wrote to the DOCCS chief medical officer, defendant Dr. Koenigsmann, and Dr. Koenigsmann responded that plaintiff needed to follow normal sick call procedures to make his requests.  Plaintiff then filed numerous sick call slips, but claims they were all ignored.  On May 8, 2012, plaintiff saw defendant physician assistant Oakes for pain medication but plaintiff remained in pain.  Plaintiff

then claims that he was authorized to receive physical therapy but it was denied by

Dr. Koenigsmann, as well as plaintiff's request for a specialist to examine him.  On July 22,

2012, plaintiff's claims that his back "went out" and that he hit his head (id. at third unnumbered

page).  On January 9, 2013, plaintiff was diagnosed with nerve dysfunction at the wrist and

carpel tunnel syndrome.  On May 21, 2013, he was diagnosed with mild back pain in the lower

back (id.).

*Defense Motion for Summary Judgment*

Plaintiff filed his statement of disputed facts (Docket No. 67) but it appears to agree in

relevant parts with defendants' statement of material facts (Docket No. 62), save disputing facts

dispositive of his claim.  Where there is no material difference, defendants' statement will be

cited and differences will be noted.

Plaintiff was an inmate at Southport during the period at issue (Docket No. 62, Defs.

Statement ¶ 14).  Dr. Canfield was the facility services health director at Southport, while

Dr. Koenigsmann was the chief medical officer for DOCCS (id. ¶¶ 15-16) and Peter Bogarski

was regional health service administrator (id. ¶ 19).  Defendants Benjamin Oakes and vonHagn

were physician's assistants at Southport (id. ¶¶ 17, 18).

Plaintiff alleges that his Eighth Amendment rights were violated by defendants providing

inadequate medical care to him while at Southport (id. ¶ 20).  Plaintiff claims defendants did not

properly treat his back pain related to his scoliosis, refused to address his medical needs, denying

him pain medication, and refusing to send him either to a specialist or physical therapy (id. ¶ 21).

Plaintiff's scoliosis was treated with a plan to address current symptoms with physical therapy,

home exercise, and medication (id. ¶¶ 23, 24).  Plaintiff received treatment for this condition

when he was previously at the Attica Correctional Facility (id. ¶¶ 25-31) until he was transferred

to Southport (see id. ¶ 32). Upon his arrival at Southport, on October 21, 2011, plaintiff denied

that he had any chronic medical conditions and his current medication was only Claritin (id.

¶ 32; see also Docket No. 70, Defs. Response to Pl. Statement of Fact ¶ 30). Plaintiff's

Statement of Disputed Facts does not discuss whether he mentioned any chronic medical

conditions upon his arrival at Southport (cf. Docket No. 67, Pl. Statement ¶ 30).

While at Southport, plaintiff's medical record included low back pain, shoulder pain,

neck pain, rash, and ear pain (Docket No. 62, Defs. Statement ¶ 33; Docket No. 62, Canfield

Decl. ¶ 17). Defendants point out that plaintiff was treated for his rash (Docket No. 62, Defs.

Statement ¶ 34), ear complaints (id. ¶ 35), and low back pain (id. ¶¶ 36-37). Plaintiff stated in

2012 (as he was seen over 70 times for his back) that he was "putting in sick call every day until

Albany approves my stuff" (id. ¶ 39). He was offered over-the-counter medication on three

instances May 29 to June 2, 2012 (id. ¶¶ 40, 41), and plaintiff declined that medication (id. ¶ 40).

Defendants then reviewed the treatment plaintiff received for his rash and back by

Dr. Canfield and Oakes from October 25, 2011, to July 11, 2013 (id. ¶¶ 42-78). They then

discussed Dr. Koenigsmann and his role as chief medical officer, responsible for an 80-person

staff and overseeing 1,680 health care staff (id. ¶ 79) and receiving thousands of letters from

inmates complaining of their care (id. ¶ 80). They then recounted plaintiff's stream of

correspondence to Dr. Koenigsmann (id. ¶¶ 81-95, 98-108). In some instances, Dr.

Koenigsmann referred plaintiff's letters to Bogarski to investigate (e.g., id. ¶¶ 90, 95-96).

Defendant vonHagn is a nurse administrator at Southport (id. ¶ 109) whose duties include

supervising nursing staff there and responding to sick call responses and grievances regarding

4

inmate medical care (id. ¶ 111).  Although plaintiff does not specifically allege anything against

vonHagn, plaintiff alleges that he submitted sick call slips that he claims were ignored by

medical staff (id. ¶ 110).  VonHagn responded to sick calls plaintiff filed in May 2012 (id.

¶¶ 112-13), November and December 2012 (id. ¶¶ 114-16) and to grievances plaintiff filed (id.

¶¶ 118-21, 117).

Defendants in this motion argue that they provided adequate medical care to plaintiff

(Docket No. 62, Defs. Memo. at 3-6), in particular, that Dr. Canfield and Oakes, as primary

providers, treated plaintiff.  Plaintiff differs with the techniques Dr. Canfield performed and with

the efforts of Oakes to seek treatment (id. at 6-8, 8-11), and thus plaintiff fails to establish that

either the objective or subjective components for a deliberate indifference claim.  Since the

treating personnel were not deliberately indifferent, defendants conclude that the supervisory

officials and employees (Dr. Koenigsmann, Bogarski, vonHagn) cannot be held liable for

violating plaintiff's civil rights (id. at 14).  Additionally, those defendants were not personally

involved in plaintiff's treatment (id. at 14-18), as conceded by plaintiff (Docket No. 66, Pl.

Memo. at eighteenth unnumbered page) despite his argument that Dr. Koenigsmann is liable

because he is chief medical officer of DOCCS (id. at twenty-first unnumbered page); therefore

defendants argue that they are not liable (Docket No. 62, Defs. Memo.at 14-18).  They deny that

plaintiff stated a claim for deliberate indifference to his carpel tunnel of his wrist (id. at 18-20).

Alternatively, defendants argue that they are entitled to qualified immunity (id. at 20).

*Plaintiff's Motion for Summary Judgment*

In response to defendants' motion, plaintiff also moved for summary judgment (Docket

No. 64).  He repeats the initial facts asserted by defendants in their motion regarding the parties

and plaintiff's care while at Attica Correctional Facility (<u>compare</u> Docket No. 67, Pl. Statement

¶¶ 1-30 <u>with</u> Docket No. 62, Defs. Statement ¶¶ 1-32; <u>see also</u> Docket No. 70, Defs. Response to

Pl. Statement).  Regarding his treatment at Southport, plaintiff contends that defendant

Dr. Canfield and Oakes knew and disregarded the "excessive risk to" plaintiff's health, arguing

that he was not prescribed medication for ninety days (from October 21, 2011, to January 18,

2012) for his chronic lower back pain and scoliosis and that these defendants failed to treat his

condition properly for a year and a half (Docket No. 66, Pl. Memo. at seventh unnumbered

page).  Defendants allegedly ignored plaintiff's requests for physical therapy, TENS unit, a "flat

order for back injury" added on May 22, 2013, and a delay in referring plaintiff to diagnostic

testing for his chronic pain (<u>id.</u> at seventh through eighth unnumbered pages).  He points to

instances within his medical record where he made complaints about his back and neck that went

unheeded (<u>id.</u> at eighth through tenth unnumbered pages).  Plaintiff argues that he sufficiently

alleged a claim against Dr. Canfield, given the "objective documentation in the record" of Dr.

Canfield's failure to treat his scoliosis (<u>id.</u> at eleventh unnumbered page).  He contends that a

material issue of fact exists, to preclude summary judgment to defendants, because he had

received pain medication (Motrin, or "Mortin" as plaintiff named it) while at Attica Correctional

Facility but not at Southport (<u>id.</u> at twelfth unnumbered page).  He claims that he was not

prescribed pain medication for the first ninety days he was at Southport (<u>id.</u> at seventh and

seventeenth unnumbered pages).

        In response to defendants' motion, plaintiff argues that Dr. Koenigsmann, Bogarski, and

vonHagn had sufficient personal involvement for failing to address noticed constitutional

violations; here plaintiff's denied treatment (id. at twenty-fifth unnumbered page).  He also

claims that he alleged a claim for failure to treat carpel tunnel syndrome (id. at

Defendants dispute whether plaintiff was deprived pain medication from October 21,

2011, to January 18, 2012, as plaintiff alleges, arguing that no pain medication was indicated in

his admitting medical records and that he was prescribed Ibuprofen and an analgesic balm on

December 18, 2011 (Docket No. 71, Defs. Memo. at 3).  They contend that plaintiff disputes the

medical judgment made by defendants and those judgments are not the basis for a deliberate

indifference claim (id. at 5-6).

DISCUSSION

I.      Applicable Standards

A.      Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec.

2010).  The party seeking summary judgment has the burden to demonstrate that no genuine

issue of material fact exists.  In determining whether a genuine issue of material fact exists, a

court must examine the evidence in the light most favorable to, and draw all inferences in favor

of, the non-movant.  Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine

'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).

While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).  The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exist a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

B.      Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, in order to state a claim for inadequate medical treatment,

plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical

need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble,

429 U.S. 97, 104 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth

Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments

that "involve the unnecessary and wanton infliction of pain.") (citations omitted); Hathaway v.

Coughlin, 37 F.3d 63, 66 (2d Cir.  1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S.

1154 (1995).

"To establish an unconstitutional denial of medical care, a prisoner must prove

'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting

Estelle, supra, 429 U.S. at 104).  Mere negligent treatment or malpractice upon a suspect,

however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251,

254 (2d Cir. 1972).  This claim has two elements, an objective component, that the deprivation

must be sufficiently serious; and a subjective component, that the defendant official must act

with sufficiently culpable state of mind.  Hathaway, supra, 37 F.3d at 66.  "Sufficiently serious"

for the objective component contemplates "a condition of urgency, one that may produce death,

degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J.,

dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).  Plaintiff needs to prove that defendants

wantonly intended to cause him to suffer.  Wilson v. Seiter, supra, 501 U.S. at 302.

C.      Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the

Court to resolve is whether the facts, taken in the light most favorable to the party asserting the

injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S.

194, 201 (2001).  As required by the Saucier Court, this Court first considered the constitutional

question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson

v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine

whether a constitutional violation occurred before considering whether defendants enjoy

qualified immunity.  Instead, district courts determine in each case whether to consider first the

question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by

qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317,

1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his

act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled

to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of

Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

II.     Application

Plaintiff in opposition to defendants' motion and in support of his motion for summary

judgment submits a limited statement of material facts and does not address the facts asserted in

defendants' papers regarding his medical treatment at Southport.  Under this Rule 56,

defendants' uncontested statements are deemed admitted, Fed. R. Civ. P. 56(e)(2), (3); see

W.D.N.Y. Loc. Civ. R. 56(a)(2).

Both parties present plaintiff's extensive medical record while incarcerated at Southport.

Plaintiff here complains that defendants failed to treat his low back pain and scoliosis in the

manner plaintiff desired.  This is (at its worst) a claim for medical malpractice and as such falls

below the standard for the objective prong of a constitutional deliberate indifference claim, see

Corby, supra, 457 F.2d at 254.  Even if plaintiff proved an objective deprivation of his Eighth

Amendment right against cruel and unusual punishment, he does not show that defendants had

the subjective intent to deprive him.  The parties merely disagree on the manner of plaintiff's

treatment and that does not state an Eighth Amendment violation, Ross v. Kelly, 784 F. Supp.

35, 44 (W.D.N.Y.) (Larimer, J.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040

(1992) (Docket No. 71, Defs. Memo. at 3).  The decision whether to continue over-the-counter

pain medication, despite review of plaintiff's prior medical records from the Attica Correctional

Facility (see Docket No. 66, Pl. Memo. at twelfth unnumbered page), does not result in finding

that defendants were deliberately indifferent (or even raise a material issue of fact on that point).

Plaintiff contends that Oakes is liable for recommended treatments that either did not work (pain

medication) or were denied (physical therapy) (id. at fourteenth unnumbered page); this does not

constitute deliberate indifference.  Plaintiff cites cases that hold that issues of medical judgment

are not the basis for a deliberate indifference claim (id. at fifteenth unnumbered page, citing

Estelle, supra, 429 U.S. at 107; Hernandez v. Keane, 341 F.3d 137, 147 (2d Cir. 2003); see also

Docket No. 71, Defs. Memo. at 2).  Plaintiff here faults defendants at Southport for failing to

11

treat his scoliosis while later treating his lower back pain (see Docket No. 66, Pl. Memo. at fifteenth to seventeenth unnumbered pages).

As was noted by Judge Larimer in Ross, supra, 784 F. Supp. at 44, this case is similar to the facts in Estelle.  In both cases, the plaintiffs claimed deliberate indifference when more aggressive medical treatments that they sought were not provided.  The Estelle Court held that a constitutional violation did not occur when "additional diagnostic techniques or forms of treatment" are not used and the choice of such treatments were "a classic example of a matter for medical judgment," 429 U.S. at 107; Ross, supra, 784 F. Supp. at 44.

Even if plaintiff somehow established the objective component for his deliberate indifference claim (which is not the case), plaintiff has not met the subjective component. Plaintiff offers no proof of defendants' culpable state of mind to wantonly intend to injure plaintiff.

As to the supervisory defendants, plaintiff concedes that they had no involvement in the medical treatment he received.  He merely argues that there is a material issue of fact because they received (and either failed to act upon or rejected) his grievances and complaints about that treatment.  (Id. at eighteenth unnumbered page.)  But the filing of grievances alone does not establish an issue of fact and fails to show deliberate indifference (see Docket No. 71, Defs. Memo. at 5).

As discussed above, this Court considers first the merits of plaintiff's constitutional claim and then, if necessary, defendants' qualified immunity argument.  Given that plaintiff has not established a constitutional violation, this Court need not address defendants' alternative argument that they are entitled to qualified immunity.

Defendants' motion (Docket No. 62) for summary judgment therefore is **granted** and plaintiff's cross motion for summary judgment in his favor (Docket No. 64) is **denied**.

III.     Appeal as <u>In Forma Pauperis</u> Appellant

Finally, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### CONCLUSION

For the reasons stated above, defendants' motion (Docket No. 62) for summary judgment is **granted** and plaintiff's motion (Docket No. 64) for summary judgment in his favor is **denied**. The  Court Clerk is instructed to enter judgment in accordance with this Order and close this case.

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        June 2, 2014